**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
GILBERTE FOUCHE,

                         Plaintiff,

            -against-                  **MEMORANDUM OF
DECISION AND ORDER**
14-CV-02492 (ADS)(ARL)

ST. CHARLES HOSPITAL,

                        Defendant.
----------------------------------------------------------X

**APPEARANCES:**

**Alero O. Mayor, Esq.**
*Attorney for the Plaintiff*
119 Beach 61st Street
Suite 1
Arverne, NY 11692
    By:    Alero O. Mayor, Esq.

**Sheppard Mullin Richter & Hampton, LLP**
*Attorneys for the Defendant*
30 Rockefeller
New York, NY 10112
    By:    Kevin James Smith, Esq.

**SPATT, District Judge**.

      On April 18, 2014, the Plaintiff Gilberte Fouche (the "Plaintiff") commenced this action against the Defendant St. Charles Hospital (the "Defendant"). The Plaintiff asserts three claims for relief: (1) wrongful termination or constructive discharge in violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.,* namely § 510 of ERISA; (2) retaliation in violation of New York Labor Law § 740 and New York Civil Service Law § 75-

1

b; and (3) discrimination on the basis of race, color, gender, and national origin in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), § 2000e *et seq.*

Presently before the Court is a motion by the Defendant pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6) to dismiss the complaint in its entirety. For the reasons set forth below, the Defendant's motion is granted; the complaint is dismissed in its entirety; and the Plaintiff is given twenty days to file an amended complaint limited to a claim under 42 U.S.C. § 1981.

## I. BACKGROUND

A. <u>Underlying Factual Allegations</u>

Unless stated otherwise, the following facts are drawn from the complaint and construed in a light most favorable to the non-moving party, the Plaintiff.

The Plaintiff is a resident of New York, a black female of African ancestry, and Haitian national origin. She is a registered nurse ("RN") and was an employee of the Defendant, a hospital in Suffolk County, New York, from 2005 to 2011. The Plaintiff is a member of the New York State Nurses Association ("NYSNA"), a labor union that had a collective bargaining agreement with the Defendant at all the relevant times.

The Plaintiff's regular shift as an RN was in the Intensive Care Unit. On or about October 21, 2011, the Plaintiff covered the Telemetry Unit for the night shift. A white nurse had been granted overtime and had been scheduled to cover the Telemetry Unit that night. However, that nurse refused to work the shift in the Telemetry Unit and was, instead, permitted to work in the Intensive Care Unit. According to the Plaintiff, she was assigned to the Telemetry Unit as

2

the sole RN, without sufficient supporting staff and with more patients under her care than permitted by the Defendant's internal rules.

During this shift, one patient's defibrillator machine indicated a reading of atrial fibrillation ("A-Fib"). After checking the machine, the Plaintiff phoned the physician in charge of the patient; the physician told the Plaintiff that the patient had a history of such conditions, and prescribed certain medication.

After treating the patient, the Plaintiff discovered a problem with a remote defibrillator monitor; in fact, the Plaintiff subsequently discovered that all the machines in the Telemetry Unit were faulty. (Compl. ¶¶ 12–14.) The Plaintiff "was then advised that the machines had been malfunctioning for a while and that this was well known to the administration [of the Defendant]." (Id. ¶ 14.) The Plaintiff later documented in a written report that the defibrillator machines in the Telemetry Unit were defective.

At the end of the night shift, the physician who advised the Plaintiff on how to treat the patient with "A-Fib" reassured the Plaintiff that the administering of medication to that patient was proper. (Id. ¶ 17.) The Plaintiff claims that she "did not breach any hospital rules or rules of professional conduct applicable to nurses." (Id. ¶ 33.)

According to the Complaint, the Plaintiff suffered discriminatory treatment because co-workers who were white or of American national origin were not required to work "over time" in the Telemetry Unit without sufficient staff support, and with defective equipment. In addition, white employees were generally allowed to take time off on holiday nights and weekend nights, while the Plaintiff and "others within her protected class" were not so allowed. (Smith Decl. Exh. 2.) The Plaintiff alleges that she was harassed and discriminated against by her supervisors, who

3

were of the white race and of American national origin. The Plaintiff allegedly complained to management about this discrimination, but the conduct continued.

One week after the Plaintiff's night shift in the Telemetry Unit, she was called to meet with certain administrators employed by the Defendant, after which she was placed on unpaid leave indefinitely. (Compl. ¶ 19.) According to the Complaint and the Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), the Plaintiff was placed on unpaid leave because of her race, color, gender and national origin and because she complained about the hospital's defective machines. The hospital administration told the Plaintiff that she was subjected to discipline for improperly responding to the patient in "A-Fib" condition on the night shift of October 21, 2011. (Compl. ¶ 21.)

The hospital administration then gave the Plaintiff the choice of resigning her job immediately, or remaining on unpaid leave and being subject to investigation by the Office of Professional Discipline, which would impact her RN license. The Defendant did not inform the Plaintiff that her resignation would also automatically "trigger a reporting incident" to the Office of Professional Discipline; rather, the Defendant apparently told the Plaintiff that the matter would not be reported if she resigned. On November 16, 2011, the Plaintiff resigned her employment.

The Plaintiff alleges that the Defendant did not follow the stipulations under a collective bargaining agreement when the Defendant constructively discharged the Plaintiff. The Plaintiff also alleges that co-workers who were white or of American national origin would not have similarly been suspended without pay or "forced to resign" (Compl., ¶ 49.)

4

Subsequent to her resignation and contrary to its assurances, the Defendant initiated disciplinary proceedings against the Plaintiff. The matter was brought before the Office of Professional Discipline. On August 29, 2013, the Office of Professional Discipline dismissed all charges.

However, the Defendant "caused a delinquent entry to be made in [the Plaintiff's] employment record and gave her unsatisfactory references causing all local hospitals not to hire her." (Id.) According to the Complaint, "other higher up personnel" of the Defendant were fired because they allowed the continued use of defective defibrillator machines in the Telemetry Unit. (Compl., ¶ 36.)

B. Procedural History

On December 2, 2013, more than 300 days after the Plaintiff's alleged constructive discharge, she filed a Charge of Discrimination with the EEOC against the Defendant and the NYSNA based on race, sex, color, and national origin. (Id.)

On January 21, 2014, the EEOC issued a Notice of Right to Sue to the Plaintiff. However, the Notice of Right to Sue states, in pertinent part, that: "Your charge was not timely filed with the EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge."

On April 18, 2014, the Plaintiff filed this complaint.

On July 16, 2014, the Defendant moved pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the complaint in its entirety, contending that each of the Plaintiff's claims is time-barred. In opposition, the Plaintiff asserts, among other things, that her Title VII claim is timely under the "continuing violation" exception to Title VII's statute of limitations.

5

## II. DISCUSSION

A. <u>The Legal Standard on a Fed. R. Civ. P. 12(b)(6) Motion to Dismiss</u>

Under the now well-established <u>Twombly</u> standard, a complaint should be dismissed only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). The Second Circuit has explained that, after <u>Twombly</u>, the Court's inquiry under Rule 12(b)(6) is guided by two principles. <u>Harris v. Mills</u>, 572 F.3d 66, 71–72 (2d Cir. 2009)(citing <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678–79, 129 S. Ct. 1937, 1949–50, 173 L. Ed. 2d 868 (2009)).

"First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" <u>Id.</u> at 72 (quoting <u>Iqbal</u>, 556 U.S. at 678, 129 S. Ct. at 1949). "'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss' and '[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" <u>Id.</u> (quoting <u>Iqbal</u>, 556 U.S. at 679, 129 S. Ct. at 1950). Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and . . . determine whether they plausibly give rise to an entitlement of relief." <u>Iqbal</u>, 556 U.S. at 679, 129 S. Ct. at 1950.

In considering a motion to dismiss, this Court accepts as true the factual allegations set forth in the complaint and draws all reasonable inferences in the Plaintiff's favor. <u>Zinermon v. Burch</u>, 494 U.S. 113, 118, 110 S. Ct. 975, 979, 108 L. Ed. 2d 100 (1990); <u>In re NYSE Specialists Secs. Litig.</u>, 503 F.3d 89, 91 (2d Cir. 2007). The issue on a motion to dismiss is "not whether a

plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Todd v. Exxon Corp., 275 F.3d 191, 198 (2d Cir. 2001) (citation omitted).

B. The ERISA Claim

Section 510 of ERISA prohibits, among other things, suspensions, expulsions, discharges, and other actions for the purpose of interfering with any right to which an employee benefit plan participant may become entitled under the plan. 29 U.S.C.A. § 1140 (West 2006). However, the Court finds that the Plaintiff's claim for violation of § 510 is time-barred, as she was allegedly "constructively discharged" on November 16, 2011, and this litigation was not commenced until April 18, 2014.

"A two-year statute of limitations governs the assertion of claims made under that section." Weir v. Holland & Knight, 05 CIV. 9358 (LTS)(AJP), 2007 WL 1815494, at *2 (S.D.N.Y. June 25, 2007)(citing Sandberg v. KPMG Peat Marwick, 111 F.3d 331, 337 (2d Cir. 1997)). ERISA does not specify a statute of limitations for § 510 claims. Accordingly, "a court must apply the limitations period of the state-law cause of action most analogous to the federal claim." Sandberg, 111 F.3d at 333. The Sandberg court found that New York Workmen's Compensation Law § 120 is the most analogous New York State law claim to § 510 of ERISA, and held that the two-year statute of limitations provided for by that statute governs all claims arising under § 510 of ERISA. Id. at 337.

The Plaintiff argues in her opposition papers that the breach of contract statute of limitations is more analogous to her claim than is § 120 of New York Workmen's Compensation Law. However, that argument was specifically rejected by the Second Circuit in Sandberg. Id. at

334-336. Thus, the Court grants that part of the Defendant's motion to dismiss the Plaintiff's ERISA § 510 claim.

C. The New York Labor Law Claims

The Plaintiff alleges that she engaged in in statutorily-protected expression when she spoke out and disclosed the Defendant's policies and practices concerning defibrillators that allegedly endangered patients. In this regard, the Plaintiff asserts that she was terminated in violation of New York Labor Law § 740 and New York Civil Service Law §75-b.

New York Labor Law Section 740, also known as the "Whistleblower Statute," prohibits retaliatory personnel action against an employee because that employee, among other things, discloses to a supervisor a policy or practice of the employer that violates law, rule, or regulation and presents a substantial and specific danger to the public health or safety, N.Y. Lab. Law § 740(2)(a). Employees who believe they have been the subject of a violation of Section 740(2) "may institute a civil action . . . within one year after the alleged retaliatory personnel action was taken." Id. § 740(4)(a). Section 740 of the New York State Labor Law does not apply to public employers. Dibiase v. Barber, No. CV 06-5355 (AKT), 2008 WL 4455601, at *5 (E.D.N.Y. 2008).

Here, the alleged retaliatory action took place when the Plaintiff was constructively discharged on November 16, 2011. Again, the Plaintiff did not commence this action until April 16, 2014. Therefore, the Court grants that part of the Defendant's motion to dismiss the Plaintiff's claim under New York Labor Law § 740 as untimely.

The Court further finds that the Plaintiff cannot state a claim under New York Civil Service Law § 75-b — the public employee counterpart to New York Labor Law § 740 –- that is,

because the Defendant is a private, non-profit hospital. Even if New York Civil Service Law § 75-b were applicable, the relevant statute of limitations, also one year, has expired. Civil Service Law § 75–b(3)(c); Labor Law § 740(4)(a). Accordingly, the Court grants that part of the Defendant's motion to dismiss the Plaintiff's claim under New York Civil Service Law § 75-b.

D. The Title VII claim

The Plaintiff's opposition papers do not dispute that she filed her EEOC charge of discrimination more than 300 days after her alleged constructive discharge in November 2011.

However, the Plaintiff invokes the continuing violation doctrine, as an exception to Title VII's statute of limitations. Patterson v. Cnty. of Oneida, 375 F.3d 206, 220 (2d Cir. 2004). Pursuant to this exception, "if a Title VII plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone." Id. (quoting Lambert v. Genesee Hospital, 10 F.3d 46, 53 (2d Cir. 1993), cert. denied, 511 U.S. 1052, 114 S. Ct. 1612, 128 L. Ed. 2d 339 (1994)). Thus, in other words, this exception applies "for claims that the discriminatory acts were part of a continuing policy and practice of prohibited discrimination," Valtchev v. City of New York, 400 F. App'x. 586, 588 (2d Cir. 2010), so long as "one act of discrimination in furtherance of the ongoing policy occurred within the limitations period." Patterson, 375 F.3d at 220. On the other hand, discrete acts do not fall within the exception and "each discrete act starts a new clock for filing charges alleging that act." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113–15, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002).

"As a general rule, courts in the Second Circuit have viewed continuing violation arguments with disfavor." De La PeÑa v. Metro. Life Ins. Co., No. 12 Civ. 766 (ADS), 2013 WL 3488510, at *11 (E.D.N.Y. July 11, 2013)(internal citation and quotation omitted), aff'd, 552 F. App'x 98 (2d Cir. 2014); Stamm v. New York City Transit Auth., 04 Civ. 2163 (SLT)(JMA), 2013 WL 244793, at *8 (E.D.N.Y. Jan. 22, 2013). Thus, only "compelling circumstances will warrant the application of the exception to the statute of limitations." De La PeÑa, 2013 WL 3488510, at *11.

Here, relying on the counting violation doctrine, the Plaintiff asserts that the dismissal of the misconduct charges against her by the New York State Office of Professional Misconduct on August 26, 2013 constitutes part and parcel of a discriminatory practice or act that renders her otherwise untimely Title VII claim to be timely. However, the Plaintiff cites no authority for the proposition that an action taken by a third party, rather than the employer itself, can support a continuing violation theory of timeliness.

The Plaintiff's Title VII claim fails for the additional reason that she did not assert her continuing violation theory before the EEOC. Szuszkiewicz v. JPMorgan Chase Bank, 12-CV-3793 (SL)(VMS), 2014 WL 1338302, at *7 (E.D.N.Y. Mar. 31, 2014); Fitzgerald v. Henderson, 251 F.3d 345, 360 (2d Cir. 2001)(A "plaintiff may not rely on a continuing violation theory of timeliness unless [ ]he has asserted that theory in the administrative proceedings."); Miller v. Int'l Tel. & Tel. Corp., 755 F.2d 20, 25 (2d Cir. 1985)("[A] continuing violation [must be] clearly asserted both in the EEOC filing and in the complaint.").

For these reasons, the Court grants that part of the Defendant's motion to dismiss the Plaintiff's Title VII claim.

E. The Proposed § 1981 claim

In addition to opposing the Defendant's motion to dismiss, the Plaintiff seeks permission to amend her complaint to interpose a claim against the Defendant for race discrimination under § 1981. Section 1981 "protects the equal right of '[a]ll persons within the jurisdiction of the United States' to 'make and enforce contracts' without respect to race." Domino's Pizza, Inc. v. McDonald, 546 U.S. 470, 474, 126 S. Ct. 1246, 163 L. Ed. 2d 1069 (2006)(quoting 42 U.S.C. § 1981(a)).

The statute of limitations applicable to § 1981 claims is three years. Patterson, 375 F.3d at 225. Thus, were the Plaintiff to bring a cause of action under § 1981 on or before November 16, 2014, three years after the date of her alleged constructive discharge, such a claim would be timely.

However, absent a formal pleading of this proposed cause of action, the Court declines to pre-judge whether such a claim would withstand Rule 12(b)(6) scrutiny. Accordingly, the Court exercises its discretion and gives the Plaintiff twenty days from the date of this order to file an amended complaint limited to a cause of action under § 1981.

### III. CONCLUSION

For the foregoing reasons, it is hereby:

**ORDERED,** that the Court grants the Defendant's motion to dismiss the complaint in its entirety and the complaint is dismissed; and it is further

**ORDERED**, that the Plaintiff is given twenty days from the date of this order to file an amended complaint limited to a cause of action under § 1981. In the event the Plaintiff fails to do so, the Clerk of the Court is directed to close this case.

11

**SO ORDERED.**
Dated: Central Islip, New York
September 8, 2014

                                              __*Arthur D. Spatt*_____
                                                 ARTHUR D. SPATT
                                             United States District Judge